# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE A.S.M., *et al.*, | * |
| | *    Civil Action No.: 2:25-cv-03144 (JRS) |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| THE CHEESECAKE FACTORY, INC., *et al.*, | * |
| | * |
| Defendants. | * |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY AND COMPEL INDIVIDUAL ARBITRATIONS

In 2002 The Cheesecake Factory Restaurants, Inc.[1] ("TCFI") rolled out its Alternative Dispute Resolution ("ADR") Program, wherein TCFI and all of its employees mutually agreed to resolve disputes via individual arbitration. The Alternative Dispute Resolution Program is reduced to writing in the long-form Arbitration Agreement and is articulated in the Employee Handbook issued to every TCFI employee, including Plaintiffs. All five Doe Plaintiffs[2], like every other TCFI employee, agreed to and were subject to the ADR Program. In violation of this promise to resolve disputes via individual arbitration, Plaintiffs filed suit against TCFI in this Court. As is fully articulated below, the Court should hold Plaintiffs to their promises, grant TCFI's motion to compel individual arbitrations and stay this matter pending the outcome of those arbitrations.

## FACTUAL BACKGROUND

All Plaintiffs worked for TCFI at the Willow Grove, PA location, 2500 Westmorland Rd.,

---

[1] The Cheesecake Factory Restaurants, Inc. was Plaintiffs' employer. The Cheesecake Factory Restaurants, Inc. and The Cheesecake Factory Bakery, Inc., are both wholly owned subsidiaries of parent company The Cheesecake Factory, Inc. (Declaration of Barbra Lewis, Ex. 1 at ¶ 25.) All Defendants are subject to and covered by the Arbitration Agreement.

[2] While Defendants do not intend to oppose Plaintiffs' motion to proceed anonymously, the Court should be aware that when each Plaintiff filed their EEOC Charge they did so with full disclosure of their identities.

Space No. 3225, Willow Grove, PA 19090. (Declaration of Barbra Lewis, Ex. 1, at ¶¶ 3-7.) Plaintiff ASM worked from January 21, 2013 – April 21, 2022, with the most recent position of line cook. (*Id*. at ¶ 3.) Plaintiff MLRM worked from October 3, 2008 – April 28, 2022, with the most recent position of "prep" cook. (*Id*. at ¶ 4.) Plaintiff ERR worked from April 8, 2012 – April 28, 2022, with the most recent position of line cook. (*Id*. at ¶ 5.) Plaintiff EGP worked from March 18, 2011 – April 28, 2022, with the most recent position of prep cook. (*Id*. at ¶ 6.) And Plaintiff AAC worked from August 27 2009 – April 28, 2022, with the most recent position of prep cook. (*Id*. at ¶ 7.) All Plaintiffs went through the onboarding procedures outlined below and all Plaintiffs signed the TCFI Arbitration Agreement. (*Id*. at ¶ 8.)

**Onboarding At Time Of Hire**

All employees at TCFI restaurants in Pennsylvania complete onboarding at the start of their employment. (*Id*.) During this onboarding process, employees are provided copies of several important documents, including the Employee Handbook and, beginning in 2013, the long form version of the ADR Policy and Arbitration Agreement. (*Id*.) TCFI ensures that this policy of providing copies of important documents to new hires during onboarding is followed by each of its Pennsylvania restaurant locations through a series of monthly self-review audits conducted by each restaurant and annual corporate internal audits. (*Id*. at ¶ 9.) These audits ensure that all newly hired employees receive the Employee Handbook and Arbitration Agreement. (*Id*.)

When TCFI hired John Doe ASM in January 2013, he was provided with a copy of the Employee Handbook. (*Id*. at ¶ 11.) When TCFI hired Jane Doe MLRM in October 2008, she was provided with a copy of the Employee Handbook. (*Id*.) When TCFI hired Jane Doe ERR in April 2012, she was provided with a copy of the Employee Handbook. (*Id*.) When TCFI hired Jane

Doe EGP in March 2011, she was provided with a copy of the Employee Handbook. (*Id*.) When TCFI hired John Doe AAC in August 2009, he was provided with Employee Handbook. (*Id*.)

**The Arbitration Agreement In The Employee Handbook**

The TCFI Employee Handbook contains valuable information for employees including current TCFI policies and best practices. (*Id*. at ¶ 10.) The versions of the Employee Handbook provided to all five Plaintiffs between 2008 and 2013 contained a two-page acknowledgment form. (*Id*.) The acknowledgment form contains nine paragraphs. (*Id*. at ¶ 12.) Employees are required to sign their initials next to each paragraph. (*Id*.) At the end of the nine paragraphs is an additional acknowledgment section. (*Id*.) In this section, the employee is required to print their name, sign their name, provide the date and identify their restaurant location. (*Id*.)

The eighth paragraph of the Employee Handbook acknowledgment form (the "Arbitration Acknowledgment") states the following:

> I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, **I agree to participate in arbitration proceedings**.

(Plaintiffs' Signed Arbitration Agreements, Exhibit F.1-F.5 to Lewis Declaration.) (emphasis added). During the onboarding process for new hires, including for Plaintiffs in 2008, 2009, 2011, 2012, and 2013, new hires are notified that the foregoing paragraph required mandatory individual arbitration for any disputes that arose during employment. (*Id*. at ¶ 13.) Onboarding employees are also notified that their offer of employment and continued employment is expressly

3

conditioned on them agreeing to the foregoing paragraph. (*Id*.) If an employment dispute arose and the matter went to arbitration, the parties would agree on arbitration through either AAA or JAMS with the rules of the agreed-upon forum to apply and with TCFI to pay all of the arbitration costs at its sole expense. (*Id*.) Plaintiffs would not have been able to begin their employment and would not have been entered into the TCFI payroll system without receiving their onboarding documents and completing their onboarding paperwork. (*Id*. at ¶ 14.)

**TCFI Provides Both An English And Spanish Language Employee Handbook**

TCFI has both an English and Spanish version of the Employee Handbook. (*Id*. at ¶ 24.) New hires whose primary language is Spanish are provided the Spanish language version of the Employee Handbook. (*Id*.) TCFI uses a third-party translation service to translate the Employee Handbook from English to Spanish. (*Id*.) Further, in anticipation of a separate litigation involving enforcement of the same Arbitration Agreement, TCFI engaged Walter L. Krochmal, a Federally Certified Court Interpreter and Expert Witness based in the Southern District of New York, to verify the accuracy of the translation of the Spanish version of the Employee Handbook provided to Spanish speaking employees, including three of five Plaintiffs. (*See* Exhibit 2, Certificate of Accuracy of Walter L. Krochmal.) Mr. Krochmal translated the English version of the Employee Handbook acknowledgment into Spanish and compared it to the Spanish version of the Employee Handbook acknowledgment presented to relevant Plaintiffs. *Id*. After reviewing and comparing the English language version and the original Spanish translation version of the Employee Handbook acknowledgment, Mr. Krochmal opined that "the latter is a reasonable translation of the former." *Id*. The Spanish language version of the Employee Handbook acknowledgment presented to Plaintiffs during their onboarding is a fair and reasonable translation of the English

13330870v1

version, and Plaintiffs cannot be said to have not understood what they were agreeing to. *Id*.

### John Doe ASM Onboarding

TCFI provided John Doe ASM with a Spanish language version of the Employee Handbook acknowledgment form at the start of his employment. (Ex. F.1 at p. 2-3.) John Doe ASM signed his initials "A.S." next to every one of the nine paragraphs—including the Arbitration Acknowledgment—and also printed his name, signed his name, provided the date, and identified his restaurant location. (*Id*.)

### Jane Doe MLRM Onboarding

TCFI provided Jane Doe MLRM with a Spanish language version of the Employee Handbook acknowledgment form at the start of his employment. (Ex. F.2 at p. 5-6.) Jane Doe MLRM signed her initials "M.S." next to every one of the nine paragraphs—including the Arbitration Acknowledgment—and also printed her name, signed her name, provided the date, and identified her restaurant location and work group. (*Id.*)

### Jane Doe ERR Onboarding

TCFI provided Jane Doe ERR with an English language version of the Employee Handbook acknowledgment form at the start of his employment. (Ex. F.3 at p. 8-9.) Jane Doe signed her initials "E.R." next to every one of the nine paragraphs—including the Arbitration Acknowledgment—and also printed her name, signed her name, and provided the date. (*Id.*)

### Jane Doe EGP Onboarding

TCFI provided Jane Doe EGP with a Spanish language version of the Employee Handbook acknowledgment form at the start of his employment. (Ex. F.4 at p. 11-12.) Jane Doe EGP signed her initials "E.G." next to every one of the nine paragraphs—including the Arbitration

5

13330870v1

Acknowledgment—and also signed her name. (*Id.*)

**John Doe AAC Onboarding**

TCFI provided John Doe AAC with an English language version of the Employee Handbook acknowledgment form at the start of his employment. (Ex. F.5 at p. 14-15.) John Doe AAC signed his initials "A.C." next to every one of the nine paragraphs—including the Arbitration Acknowledgment—and also printed his name, signed his name, provided the date, and identified his restaurant location and work group. (*Id.*)

**Employee Handbook Updates**

During Plaintiffs' employment from 2008 through 2022, TCFI re-issued the Employee Handbook—including the Arbitration Acknowledgment—three times. (Ex., Lewis Decl., at ¶ 15.) In order to ensure that all employees were made aware of and could access the updated Handbook, a notice of the Handbook update was disseminated through TCFI's scheduling software, HotSchedules. (*Id.*) Employees were further instructed to review a full copy of the Handbook via ScoopsLive or a hard copy from their Manager. (*Id.*) HotSchedules is the only method by which TCFI restaurant employees, including Plaintiffs, can access their schedule. (*Id.* at ¶ 16.) When TCFI disseminated information to employees, including Employee Handbook updates, TCFI created a notification that would appear upon first accessing HotSchedules. (*Id.*) Upon opening HotSchedules, the employee would need to read and click through the notification in order to access their schedule. (*Id.* at ¶ 17.) Employees are required to affirmatively click "continue" in order to see any additional messages and then access their schedule. (*Id.*) These notifications would, for example, announce an update to the Employee Handbook and would appear as the first screen on HotSchedules over multiple logins to ensure that all employees received the notification.

(*Id.*); *see also* Ex. A to Lewis Decl., Sample HotSchedules Message. In short, it would be impossible for an employee, including Plaintiffs, to access his or her schedule or earning statements without seeing and clicking through the home screen notification. (*Id.*)

Three times during Plaintiffs' employment, TCFI placed notifications on the home screen of HotSchedules notifying employees, including Plaintiffs, of updates to the Employee Handbook and reminding employees the multiple ways they could access the Handbook. (*Id.* at ¶ 18.) These notifications also encouraged employees to read the Handbook and to contact their General Manager if they had questions. (*Id.*) Further, the Handbook itself reminds employees that it is their "responsibility to read and adhere to the guidelines in all material," including the Handbook. (*Id.* at ¶ 19.) Finally, during the entire period of Plaintiffs' employment, TCFI staff participated in a daily staff meeting called "Alignment." (*Id.* at ¶ 20.) During Alignment, management would convey restaurant information, benefits changes, company information, and celebrations to staff members. *Id.*; *see also* Ex. B to Lewis Decl., Sample Alignment Talking Points, Ex. C to Lewis Decl., Sample Staff Member Communication. Updates to the Employee Handbook were also conveyed during Alignment. (*Id.*)

## ARGUMENT

**I.     The Court Should Stay the Case and Compel Arbitration.**

    **A.     The Supreme Court, Federal Law, And Pennsylvania Law All Strongly Favor Enforcement Of Arbitration Agreements.**

Per the Federal Arbitration Act ("FAA"), the Court should stay this case and compel Plaintiffs to individual arbitrations. *Abira Med. Lab'ys, LLC v. Sierra Health & Life Ins. Co., Inc.*, No. CV 24-1979, 2024 WL 5047467, at *3 (E.D. Pa. Dec. 9, 2024) (granting motion to compel arbitration and staying case). The FAA governs questions of arbitrability in both state

7

13330870v1

and federal courts. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).[3] Congress enacted the FAA to overcome judicial hostility to arbitration agreements and to express its desire that the courts rigorously enforce them. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 (1985). The Supreme Court has reaffirmed that under the FAA an arbitration agreement ordinarily must be treated as "valid, irrevocable, and enforceable." *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017).

Under the FAA, a party to an arbitration agreement may petition a court for an order directing arbitration in the manner provided in such agreement and the court must stay proceedings pending arbitration. *See* 9 U.S.C. §§ 3, 4. Given Congress' strong policy favoring arbitration agreements, "[i]n determining whether a matter should be arbitrated, there is a strong presumption in favor of arbitration, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007)(internal quotation omitted). Additionally, this District routinely enforces arbitration agreements between employers and employees. *See e.g. Rosser v. Crothall Healthcare, Inc.*, 744 F. Supp. 3d 394, 397 (E.D. Pa. 2024) (enforcing arbitration agreement "signed as a term and condition of her employment").

> **B.** **This Court and District Routinely Enforce Arbitration Agreements Between Employers and Employees Contained In Employee Handbooks.**

This Court correctly held that "several courts in this district, applying Pennsylvania law, have held an employer's distribution of a mandatory arbitration policy to existing at-will

---

[3] Federal law favors enforcement of arbitration agreements. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995); 9 U.S.C. § 2. Pennsylvania public policy also strongly favors arbitration. *See Moscatiello v. Hilliard*, 595 Pa. 596, 603, 939 A.2d 325, 329 (2007) ("Pennsylvania's arbitration acts…foster the federal policy favoring arbitration enforcement.")

8

13330870v1

employees-as part of an employee handbook or as a freestanding document-constitutes an offer of continued employment, subject to the terms of the arbitration program, which an employee accepts by continuing his employment after receiving notice of the program." *Alexander v. Raymours Furniture Co.*, No. 13-cv-5387, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014) (enforcing arbitration agreement contained in employee handbook) (*citing Grant v. Phila. Eagles, LLC,* No. 09-cv-1222, 2009 WL 1845231, at * 4 (E.D.Pa. June 24, 2009); *Gutman v. Baldwin Corp.,* No. 02-cv-7971, 2002 WL 32107938, at *4 (E.D.Pa. Nov.22, 2002); *Hamilton v. Travelers Prop. & Cas. Corp.,* No. 01-cv-11, 2001 WL 503387, at * 2 (E.D.Pa. May 11, 2001); *Wilson v. Darden Rests., Inc.,* No. 99-cv-5020, 2000 WL 150872, at *3–4 (E.D.Pa. Feb.11, 2000); *Venuto v. Ins. Co. of N. Am.,* No. 98-cv-96, 1998 WL 414723, at *5–6 (E.D.Pa. July 22, 1998); *cf. Brennan v. CIGNA Corp.,* 282 F. App'x 132, 135–36 (3d Cir.2008) (holding that a valid arbitration agreement existed where employer adopted and distributed to employees a mandatory arbitration policy making binding arbitration a term and condition of employment, and employees acknowledged in writing they had received and reviewed the policy)).

As is fully articulated below, the Court should once again enforce a signed, mutual arbitration agreement between employer and employee.

**II.    Standard Of Review.**

Motions to compel arbitration are reviewed under Federal Rule of Civil Procedure 12(b)(6) where the affirmative defense of arbitrability of claims is apparent on the face of a complaint or documents relied upon in the complaint. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015) (citing and quoting *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks and related punctuation removed). "An arbitration clause may

9

be deemed apparent when the contract in which the arbitration clause appears is integral to or relied upon in the complaint." *Deardorff v. Cellular Sales of Knoxville*, No. 19-cv-2642, 2022 WL 407396, at *3 (E.D.Pa. Feb. 9, 2022). Here, as in *Deardorff*, Plaintiffs were Defendants' employees and the arbitration clause is integral to the complaint. The Arbitration Agreement at issue here was a condition of Plaintiffs' employment with TCFI, and thus is integral to their claims.

Alternatively, "[i]f a party attaches an authentic arbitration agreement to a Motion to Compel Arbitration, the court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Parker v. Briad Wenco*, No. 18-cv-04860, 2019 WL 2521537, at *1 (E.D. Pa. May 14, 2019), report and recommendation adopted, No. 18-cv-4860, 2019 WL 2516059 (E.D. Pa. June 18, 2019) (citing *Silfee v. Automatic Data Processing*, 696 F. App'x 576, 578 (3d Cir. 2017)). Therefore, even if the Arbitration Agreement were not integral to the Complaint—which it certainly is—the Court can still decide this motion under Rule 12(b)(6).

To stay proceedings and compel arbitration, the Court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement" under the relevant state contract law. *Parker*, 2019 WL 2521537 at *2 (quoting *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)). When these issues are decided in favor of arbitration, there is "no place for the exercise of discretion" and the court must direct the parties to proceed in arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985). The burden of proving that the claims at issue are unsuitable for arbitration falls on the party opposing the motion. *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 91

(2000). Because both factors to compel arbitration are met here for as to all Plaintiffs, the Court must compel arbitration.

### III. A Valid Agreement To Arbitrate Exists

The Court "must 'apply the relevant state contract law to questions of arbitrability....' to determine whether the arbitration agreement is valid." *Parker*, 2019 WL 2521537 at *2. Under Pennsylvania law, "contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Id*. "The burden of proving a generally applicable contract defense lies with the party challenging the contract provision." *Id*. Here, the Employee Handbook provided to all employees and signed off on by all Plaintiffs contains a clear and concise Arbitration Agreement.

> I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, **I agree to participate in arbitration proceedings**.

(Ex. F.) (emphasis added). All Plaintiffs signed off on this language as a condition of their employment. *Id*.

Plaintiffs bear a heavy burden to challenge this arbitration provision. *See Randolph*, 531 U.S. at 92. In fact, courts may only invalidate arbitration agreements based upon generally applicable contract defenses. *See* 9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). Courts also will enforce an arbitration agreement even though the arbitrator may later determine that the contract is invalid. *Prima Paint, 388 U.S.* at 404; *Harris v. Green Tree Fin.*

11

*Corp.*, 183 F.3d 173, 179 (3d Cir. 1999). Even when using doctrines of general applicability in examining an arbitration agreement, such as unconscionability, courts are not permitted to employ those doctrines in a way that subjects arbitration agreements to special scrutiny. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). State laws that undermine enforcement of private arbitration agreements or that single out arbitration for special treatment are preempted by the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). Plaintiffs have no basis to challenge the propriety of the arbitration provision and the Court should compel arbitration.

> **A.    The Arbitration Agreement Is A Mutual Manifestation Of An Intention To Be Bound.**

In assessing intent, "the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract." *Masoner v. Educ. Mgt. Corp.*, 18 F. Supp.3d 652, 659-660 (*citing* Williston on Contracts § 4:1 (4th ed. 2007)). Here, Plaintiffs' signatures on the Agreement demonstrates their intent to be bound by its terms. *See, e.g.*, *Soroko v. Atmos, Inc.*, No. CV 11-6120, 2015 WL 5585350, at *4 (E.D. Pa. Sept. 23, 2015) (citing *Petrie v. Haddock*, 119 A.2d 45, 47 (Pa. 1956) (Under Pennsylvania law, "[a] party's signature to a contract is designed to evidence his intention to be bound thereby.")).

Next, the Agreement is mutual on its face, as both Plaintiffs and TCFI are bound to arbitrate claims which are not satisfactorily resolved by TCFI's internal procedures. That the Agreement is mutual further underscores the mutual intent to be bound. And finally, "[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood...*Ignorantia non excuasat*." *Id*. (quoting *Simeone v. Simeone*, 581 A.2d 162, 165-66 (Pa. 1990)). Even if Plaintiffs claim they did not read the agreement, that is not a defense

12

and does not mitigate their intent to be bound by the Agreement.

**B.     The Agreement Is Sufficiently Definite To Be Enforceable.**

"In Pennsylvania, '[a]n agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.'" *Id*. (quoting *Peerless Publications, Inc. v. Cnty. of Montgomery*, 656 A.2d 547, 552 (Pa. Commw. Ct. 1995), *appeal denied*, 668 A.2d 1141 (Pa. 1995)). As in *Soroko*, "the parties here certainly intended to make a contract" and the terms of the Agreement "are clear and unequivocal." *Id*. Here, as in *Soroko*, the Agreement provides "in straight forward fashion, that any dispute concerning the employment relationship between Plaintiff[s] and [TCFI] shall be settled by arbitration."

Because it is clear the Plaintiffs "agree to participate in arbitration proceedings" for "differences [that] may arise between the company and [Plaintiffs] during or following [Plaintiffs'] employment," the Agreement is sufficiently definite to be enforceable. (Ex. F.).

**C.     Consideration Exists To Enforce The Agreement.**

Finally, Pennsylvania law requires consideration to enforce an arbitration agreement. *Soroko*, 2015 WL 5585350, at *6. "<u>An exchange of promises to arbitrate constitutes sufficient consideration</u>." *Id*. (emphasis added). As the Third Circuit held in *Blair*, "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Id*. Further, while mutual promises to arbitrate constitutes sufficient consideration, so to does continued employment. As this Court held while enforcing an arbitration agreement between employer and employee in *Alexander*, "[n]umerous courts in this district have held 'continued employment fulfills the consideration requirement [for an arbitration agreement]

13

under Pennsylvania law.'" 2014 WL 3952944, at *5 (citing *Grant,* 2009 WL 1845231, at * 5 (collecting cases)).

Here, adequate consideration to enforce the agreement exists in both ways. First, Plaintiffs and TCFI have agreed to be bound by arbitration. Therefore, "adequate consideration exists and the arbitration agreement should be enforced." *Soroko*, 2015 WL 5585350, at *6. And second, Plaintiffs' continued employment—for a minimum of 9 years—also constitutes adequate consideration. *Alexander* 2014 WL 3952944, at *5; *see also Stephenson v. AT&T Services, Inc.*, No. 21-cv-0709, 2021 WL 3603322, at *7 (E.D. Pa. Aug. 13, 2021) ("Under Pennsylvania law, continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of, as well as consideration for, an arbitration agreement."). Because adequate consideration exists to enforce the Agreements, the Court should compel Plaintiffs to arbitration.

## IV. Plaintiffs' Claims Fall Within The Scope Of The Agreements.

The Supreme Court mandate regarding the scope of an arbitration agreement is clear: "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, (1986) (citation omitted). This District applies this directive and concludes that "the presumption is 'particularly applicable where the clause is broad.'" *Soroko*, 2015 WL 5585350, at *7 (quoting *AT&T Techs., Inc.,* 475 U.S. at 650). The Third Circuit is in accord, holding that "if the allegations underlying the claims touch matters covered by an arbitration clause in a contract, then those claims must be arbitrated." *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir.

2003) (internal quotation marks and citation omitted).

Here, the scope of the Agreement is broad, covering all "differences [that] may arise between [TCFI] and [Plaintiffs] during or following [] employment with [TCFI.]" As this District held in *Soroko*, "Courts that encounter arbitration clauses encompassing 'any' claim, controversy, or dispute language routinely find that the dispute falls within the scope of the arbitration clause. *Soroko*, 2015 WL 5585350, at *7 (*accord Gilmer, 500 U.S. at 23, 35*; *Steigerwalt v. Terminix Intern. Co., LP*, 246 Fed.Appx. 798, 801 (3d Cir. 2007) (ordering arbitration because arbitration clause "quite simply applies to 'all claims.'"). The same conclusion is required here.

## CONCLUSION

This Court should follow the other courts who have reviewed TCFI's Arbitration Agreement in its Employee Handbook acknowledgment form and stay this case and compel Plaintiffs to individual arbitrations.[4] The Court should compel all Plaintiffs to individual arbitrations because the arbitration agreement shows the parties' intent to arbitrate disputes.

Dated: August 19, 2025

Respectfully submitted,

 */s/John E. MacDonald*
John E. MacDonald (82828)
Constangy, Brooks, Smith & Prophete, LLP
3120 Princeton Pike, Suite 301
Lawrenceville, NJ, 08648
jmacdonald@constangy.com
Phone: 609-357-1183

**ATTORNEYS FOR DEFENDANTS**

---

[4] *See e.g. Gonzalez v. Cheesecake Factory Restaurants, Inc.*, No. 21CV5017PKCSIL, 2024 WL 989881, at *8 (E.D.N.Y. Mar. 6, 2024) (granting motion to compel based upon same employee handbook signoff arbitration language).

13330870v1